Eugene Y. Turin (SBN 342413)
MCGUIRE LAW, P.C.
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
eturin@mcgpc.com

Michael J. Flannery (SBN 196266)
CUNEO GILBERT & LaDUCA, LLP
2 City Place Drive, Suite 200
St. Louis, MO 63141-7055
Tel: (314) 226-1015
Email: MFlannery@cuneolaw.com

*Counsel for Plaintiff and the Putative Class Members*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THULR ODINSSON, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>HP, INC., a Delaware Corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation of Cal. Bus. & Prof. Code § 17200**<br>**Violation of Cal. Bus. & Prof. Code § 17500**<br>**Violation of Cal. Civ. Code §§ 1770, *et seq.***<br>**Violation of Cal. Civ. Code §§ 1790, *et seq.***<br>**Breach of Implied Warranty**<br>**Unjust Enrichment**<br><br>DEMAND FOR JURY TRIAL |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

Plaintiff Thulr Odinsson ("Plaintiff") brings this class action complaint against Defendant HP, Inc. ("Defendant") on his own behalf and on behalf of a nationwide class of consumers seeking redress from Defendant for Defendant's failure to provide and maintain software support for its Reverb G2 virtual reality headset. Defendant is aware of this defect in its devices yet has not remedied the defect or compensated the owners of the affected devices. On behalf of himself and the proposed class, Plaintiff seeks damages, restitution and injunctive relief against Defendant for the defects in its devices, and for its refusal to remedy those defects upon notice. For his class action complaint, Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), consisting of over 100 members of all proposed classes in which at least one member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

2.     This Court has personal jurisdiction over the Defendant because Defendant's corporate headquarters are in this District, and because Defendant does business in this District.

## PARTIES

3.     Plaintiff Thulr Odinsson is a citizen and resident of the State of Minnesota.

Class Action Complaint

2

4.      Defendant HP is a Delaware corporation with its national headquarters in Palo Alto, California. Defendant is one of the largest sellers and distributors of consumer electronics in the United States. Defendant is registered and conducts business in California, including this District, and conducts business throughout the United States.

## COMMON ALLEGATIONS OF FACT

5.      In the Spring of 2019, HP launched its first ever virtual reality headset, the HP Reverb G1, and in late 2020 HP released an updated version of the headset, the HP Reverb G2.

6.      The HP Reverb devices are high-resolution, PC-powered virtual reality headsets designed for immersive experiences in gaming, design, and professional applications. The original HP Reverb, released in 2019, features dual 2160 x 2160 LCD panels per eye, a 95° field of view, 90 Hz refresh rate, and 6 degrees of freedom (6DoF) tracking. The HP Reverb G2, released in 2020, improves on this with a 114° field of view, enhanced lenses and speakers developed with Valve, four built-in tracking cameras, and ergonomic controllers.

7.      In its official press release dated September 24, 2020, HP described the Reverb G2 as "the world's highest resolution VR headset among major vendors, delivering cutting-edge optics, inside-out tracking, spatial 3D audio, natural gestures, long-wearing comfort, and plug and play support for Windows Mixed Reality and SteamVR."

8.      HP prominently advertised and marketed the Reverb G2 as being developed "in collaboration with Valve and Microsoft" in virtually all of its marketing materials, creating an impression of long-term support and compatibility.[1]

---

[1] *See, e.g.*, *HP Reverb G2 Announced at VR/AR Global Summit Online*,
https://www.thevrara.com/news2/2020/6/5/hp-reverb-g2-announced-at-vrar-global-summit-online (last visited October 17, 2025).

9.     HP's advertising and marketing materials consistently emphasized the collaboration with Microsoft and the headset's compatibility with Windows Mixed Reality, creating a reasonable expectation among consumers that the headset would remain functional and supported for years to come. For example, a HP press release describes the G2 as "[u]shering in a new era of immersion" and "redefining how we game, create, collaborate and learn."[2]

10.     Critically, the Reverb devices cannot function without a connection to a Windows computer. The Reverb devices serve as both input and output devices, with input to the computer coming from the device's controllers, and audiovisual output from the computer going to the headset's speakers and video display.

11.     The Reverb G2 is wholly dependent on Microsoft's Windows Mixed Reality platform to function; without Windows Mixed Reality software, the headset cannot be recognized by computers and is non-functional for any purpose.

12.     Defendant specifically advertised and marketed its Reverb headset as having business and professional applications in addition to the video gaming and entertainment uses for which VR headsets are commonly used.

13.     Defendant also specifically advertised and marketed its Reverb G2 headsets as being compatible with the Microsoft Windows operating system, the most popular and widely used operating system for personal computers, creating a reasonable expectation that the Reverb G2 would not be "bricked" through software obsolescence or otherwise.

---

[2] *HP, Valve, and Microsoft Removing Distance Barriers with Next-Gen Virtual Reality Headset*, https://www.hp.com/us-en/newsroom/press-releases/2020/hp-valve-microsoft-next-gen-virtual-reality-headset.html (last visited October 17, 2025).

14.     Defendant's advertisements even went a step further, explicitly representing the Reverb G2 as featuring "Plug and Play" support for Windows Mixed Reality and Steam VR.[3]

15.     In fact, "Plug and Play" compatibility was the *only* possible way to operate the Reverb G2, which was not designed to be a standalone unit. Instead, it integrates tightly with the Windows PC ecosystem. For example, users were required to plug the Reverb in to a Windows PC, where it received outputs from, and sent inputs to, the Windows Mixed Reality ("WMR") software program.

16.     Unlike some other virtual reality headset manufacturers, which provide their own software support for their devices, HP's Reverb G2 is fully reliant on Microsoft's Windows Mixed Reality software, which was advertised and marketed as a key feature and suggested product longevity.

17.     In other words, HP's decision to design, manufacture, and advertise the Reverb G2 as a purely "Plug and Play" device meant that users would be totally unable to use the device in the absence of a Windows WMR equipped computer.

18.     All of HP's advertisements, marketing, and its ultimate decision to not provide ongoing support for its Reverb G2 headset originated from its Palo Alto headquarters.

### Windows Mixed Reality's Deprecation

19.     In December 2023, Microsoft announced that Windows Mixed Reality was deprecated and would be removed in a future Windows 11 update.

20.     Microsoft's announcement stated: "Windows Mixed Reality is deprecated and will be removed in Windows 11, version 24H2. This deprecation

---

[3] *Award Winning HP Reverb G2 VR Headset Just Got Better*, https://www.hp.com/us-en/newsroom/blogs/2021/award-winning-hp-reverb-g2-vr-better.html (last visited October 17, 2025).

includes the Mixed Reality Portal app, Windows Mixed Reality for SteamVR, and Steam VR Beta."[4]

21.    Microsoft's announcement also stated that existing Windows Mixed Reality devices would continue to work with Steam through November 2026, but only if users remained on Windows 11 version 23H2 and did not upgrade to the 24H2 update.[5]

22.    In October 2024, Microsoft released the Windows 11 24H2 update, which removed Windows Mixed Reality as announced, rendering Reverb G2 headsets non-functional on computers running this version of Windows.

23.    Following the Windows 11 24H2 update, consumers who installed the update found that their Reverb G2 headsets no longer functioned at all, as the necessary Windows Mixed Reality Portal software was completely removed from the operating system.

24.    Without Windows Mixed Reality Portal, the Reverb G2 cannot be detected by computers, making it impossible to use with any software, including SteamVR, Windows Mixed Reality, or any number of the business and professional applications that the Reverb G2 had been advertised for.

### HP's Lack of Support Following WMR's Deprecation

25.    After Microsoft's December 2023 announcement and the subsequent release of Windows 11 24H2, HP failed to issue any official statement or response regarding the impact on Reverb G2 owners.

26.    HP did not develop or release any alternative software, drivers, or solutions that would allow Reverb G2 owners to continue using their headsets after the Windows Mixed Reality deprecation.

---

[4] https://learn.microsoft.com/en-us/windows/whats-new/deprecated-features (last visited October 17, 2025).
[5] *Id.*

27.   HP did not offer any compensation, trade-in program, or other remedy to consumers who purchased the Reverb G2 and subsequently lost the ability to use their devices due to the Windows Mixed Reality deprecation.

28.   HP has not released any technical documentation, specifications, or APIs that would allow third-party developers to create alternative software solutions for the Reverb G2.

29.   Following the Windows 11 24H2 update, the only "solution" available to Reverb G2 owners is to avoid updating their operating system to newer versions of Windows 11, potentially exposing them to security vulnerabilities and software incompatibilities.

30.   HP continues to offer standard warranty and support services for the Reverb G2, despite the fact that the product has been rendered non-functional by Microsoft's discontinuation of Windows Mixed Reality.

31.   HP's warranty and support services do not address the fundamental issue that the Reverb G2 is now incompatible with current versions of Windows and has effectively been rendered obsolete.

32.   The Reverb G2's use of Windows Mixed Reality was an intentional design choice by HP, made in partnership with Microsoft, but the G2's complete dependency on WMR and the associated risk that WMR could be discontinued was never disclosed to consumers.

33.   HP marketed the Reverb G2 as a premium, high-quality product with a correspondingly high price point, but failed to disclose that the product could become completely non-functional due to software decisions outside of consumers' control.

34.   HP knew or should have known that Microsoft had a history of deprecating older software platforms, yet failed to develop any contingency plan for Reverb G2 users in the event of Windows Mixed Reality deprecation.

35.    Consumers who purchased the Reverb G2 reasonably expected that a premium VR headset costing $599 would remain functional for years, in line with other consumer electronics of similar price points.

36.    HP's marketing materials for the Reverb G2 emphasized its high-end components and build quality, implying long-term usability that was inconsistent with the risk of premature obsolescence due to software dependencies.

37.    HP's development of the Reverb G2 "in collaboration with Microsoft" created a reasonable expectation among consumers that HP had insight into Microsoft's long-term plans for Windows Mixed Reality.

38.    Despite its collaboration with Microsoft, HP either failed to secure long-term support commitments for Windows Mixed Reality or failed to develop alternative solutions in anticipation of its eventual deprecation.

39.    Following Microsoft's announcement of Windows Mixed Reality deprecation, HP remained silent and failed to communicate with Reverb G2 owners about the impact on their devices.

40.    HP did not provide advance notice to Reverb G2 owners about the Windows 11 24H2 update and its effect on the functionality of their headsets.

41.    HP's silence on the issue of Windows Mixed Reality deprecation has left Reverb G2 owners without clear guidance on whether their devices will ever be usable again.

42.    HP's design choices for the Reverb G2 made it wholly dependent on a single software platform that could be unilaterally discontinued, creating an unreasonable risk of premature obsolescence.

43.    HP continues to operate a support page for the Reverb G2 that does not acknowledge the fundamental issue of Windows Mixed Reality deprecation and its effect on the headset's functionality.

44.    The Windows Mixed Reality deprecation has effectively rendered the Reverb G2—a product that was marketed as cutting-edge and future-proof—obsolete just four years after its release.

45.    HP has failed to act in good faith to address the concerns of Reverb G2 owners whose expensive VR headsets have been rendered unusable through no fault of their own.

46.    HP's conduct has caused harm to Plaintiff and other members of the Class who purchased the Reverb G2 with the reasonable expectation that it would remain functional for years, only to discover that it has been rendered obsolete by software changes outside of their control.

47.    Consumer complaints on online message boards regarding the discontinuation of software support for HP's Reverb Headsets also demonstrate the scope of the defect.[6]

48.    Despite similar complaints in public forums and reports by tech journalists, all of which are immediately available to Defendant, Defendant has offered no relief to Plaintiff or the other members of the Class affected by the discontinuation of support for the affected products.

49.    Defendant's headquarters, from which it directs all advertisements and communications is located in Palo Alto, California.

**FACTS SPECIFIC TO PLAINTIFF**

50.    In June of 2021, Plaintiff purchased a HP Reverb G2 Virtual Reality Headset from Defendant's website, HP.com. The sales price of the headset was $566.

51.    At no time during his purchase transaction was Plaintiff informed that software support for the device would soon be ending.

---

[6] *See, e.g.,* https://www.reddit.com/r/WindowsMR/comments/1i259vl/is_there_any_way_to_launch_hp_reverb_g2_without/; https://mixed-news.com/en/w11-update-disables-windows-mixed-reality/ (last visited October 17, 2025).

52. Plaintiff reasonably believed that HP's advertised "partnership" with Microsoft and its advertised compatibility with Windows Mixed Reality would ensure that his Reverb G2 device would continue to be supported well into the future.

53. Less than three years later, in December 2023, Microsoft announced that it would deprecate its Windows Mixed Reality software.

54. As recommended by cybersecurity experts, Plaintiff's Microsoft Windows 11 computer was configured to download automatic updates to ensure that it was protected by the latest bug fixes and security patches.

55. On October 1, 2024, Windows 11 version 24H2 was released. Shortly thereafter, Plaintiff's computer automatically downloaded and installed the Windows 11 24H2 update, which no longer supports Windows Mixed Reality devices.

56. Immediately following installation of the update, Plaintiff's Reverb G2 device had become "bricked," i.e. entirely non-functional, without any action taken on his part.

57. Because Plaintiff's Reverb G2 device relied entirely upon Windows Mixed reality in order to function, and Windows Mixed Reality was no longer supported by the Windows 11 24H2 update, Plaintiff and thousands of other consumers logged on to their computers to find that their roughly $600 Reverb G2 devices had essentially become an expensive paperweight overnight.

58. Despite his best efforts to find workarounds that might allow his Reverb G2 devices to become functional again, Plaintiff has been unable to use his device since October 2024, and he does not know if he will ever be able to use the device again.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action on behalf of himself and a nationwide class of similarly situated individuals defined as follows:

The Class: All persons in the United States and its territories who purchased a HP Reverb G2 device.

60.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

61.    Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

62.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

63.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and

to all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

64. Defendant is one of the leading manufacturers and sellers of consumer electronics in the United States, and upon information and belief, there are at least thousands of members of the Class, such that joinder of all members is impracticable.

65. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Whether Defendant designed and built its Reverb devices in such a way that they were unreasonably reliant on third party support;

(b) Whether Defendant warranted that its Reverb devices would be supported by software updates following purchase;

(c) Whether the defective Reverb design is common to all or some of the devices purchased by the members of the Class;

(d) Whether Defendant knowingly failed to disclose to the Class the fact that software support for the devices would end within a certain time period;

(e) Whether Defendant continued to advertise, market, and sell the devices with the defects alleged herein after becoming aware of the defects;

(f) Whether Defendant failed to remedy the loss of support defect in its devices;

(g) Whether Defendant violated California consumer protection laws by selling its devices without ongoing software support;

(h)     Whether, as a result of Defendant's material misrepresentations and/or omissions of material facts related to the Reverb device defects, the members of the Class have suffered ascertainable loss of monies, property, and/or value; and

(i)     Whether Plaintiff and the Class are entitled to monetary and/or restitutionary and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200.** *et seq.*
**(on behalf of Plaintiff and the Class)**

66.     Plaintiff realleges and incorporates by reference the foregoing Paragraphs 1–65 as if set forth fully herein.

67.     California Business and Professions Code section 17200 (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or practices." Defendant has engaged in unfair business practices in violation of the UCL.

68.     Defendant has violated the unfair prong of Section 17200 because Defendant's conduct of failing to disclose that its Reverb devices would become unusable due to loss of software support, as well as its failure to provide a remedy, offends established public policy and because the harm it causes to consumers greatly outweighs any benefits associated with those practices. Defendant's conduct has also impaired competition within the virtual reality headset market and has prevented Plaintiff and the Class from making informed decisions about whether to purchase their devices and/or the price to be paid to purchase them.

69.     Plaintiff and the Class have suffered injury in fact, including the loss of money or property, as a result of Defendant's unfair and deceptive practices. As set forth in the allegations above, Plaintiff and the Class members relied on the omissions of Defendant regarding the continued compatibility of and support

for their devices in purchasing their devices. Had Plaintiff and the Class known of the true extent of the loss of software support and the complete loss of functionality of the Reverb devices, they would not have purchased their Reverb devices, or would have paid much less for them.

70.    Plaintiff and the Class members have already paid, and will be required to pay in the future, additional costs over and above what they would have paid if Defendant had accurately disclosed the extent of the loss of software support for their devices.

71.    All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business of manufacturing and selling the affected devices. Defendant's wrongful conduct is part of a pattern of generalized conduct that is still perpetuated and repeated, both in California and nationwide, as Defendant has not taken any steps to assist purchasers of its devices with software support that would allow the devices to continue functioning.

72.    Upon information and belief. Defendant's conduct originates from its corporate headquarters in California, from where information about how devices are to be advertised and marketed, and disclosures about their features that are made to consumers online and in retail locations is created and disseminated.

73.    Plaintiff requests that this Court enter such orders or judgments necessary to enjoin Defendant from continuing its unfair and deceptive practices and to restore to Plaintiff and members of the Class any money Defendant acquired by unfair competition, as provided in Cal. Bus. & Prof. Code § 17203, and for such other relief as set forth below.

## SECOND CAUSE OF ACTION
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500, *et seq*.
### (on behalf of Plaintiff and the Class)

74. Plaintiff realleges and incorporates by reference the foregoing Paragraphs 1–73 as if set forth fully herein.

75. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any … corporation … with intent … to dispose of … personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement … which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…."

76. Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

77. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading to an ordinary and reasonable consumer.

78. Plaintiff and the Class seek an order requiring Defendant to award them restitution of the money wrongfully acquired by Defendant by way of said misrepresentations by omission.

79. Additionally, Plaintiff and Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

80. Plaintiff incorporates by reference his allegations above regarding the potential inadequacies of remedies at law.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code § 1770, *et seq.***
**(on behalf of Plaintiff and the Class)**

81.     Plaintiff realleges and incorporates by reference the foregoing Paragraphs 1–80 as if set forth fully herein.

82.     Plaintiff, as well as each member of the Class, are "consumers" as defined by Cal. Civ. Code § 1761(d).

83.     Defendant's Reverb G2 devices are "goods" within the meaning of Cal. Civ. Code § 1761(a).

84.     Defendant's sale of the Reverb G2 devices were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

85.     Defendant violated the CLRA by engaging in the following practices proscribed by Cal. Civ. Code 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of HP Reverb G2 devices:

> a.  "Representing that goods or services have … characteristics … [and] uses … that they do not have" (a)(5);
>
> b.  "Advertising goods or services with the intent not to sell them as advertised" (a)(9); and
>
> c.  "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (a)(16).

86.     Specifically, Defendant made misleading representations to consumers that the Reverb G2 devices had specific features, functions, and services, and omitted material facts about its complete reliance on continued software support from the Windows Mixed Reality platform, without which the Reverb G2 entirely lacks its advertised and marketed uses.

87.    Specifically, HP was under a duty to Plaintiffs and the Class to disclose its intent to not provide its own software support for the Reverb G2 because HP had exclusive knowledge and control over the software functionality of the Reverb G2 prior to, and after, making sales of the Reverb G2 devices.

88.    HP knew that Plaintiff and the members of the Class could not reasonably be expected to learn of HP's intent to not provide software support and to instead "brick" the Reverb G2 upon discontinuation of Windows Mixed Reality, or to know that HP would not continue its advertised and marketed association with the Windows platform until such action occurred.

89.    HP's material misrepresentations and omissions alleged herein were material to and relied upon by reasonable and ordinary consumers when deciding whether to purchase the Reverb G2 or competitor models, and the amount they should pay for such purchases.

90.    Had Plaintiff and the members of the Class known that HP would not ensure software support for its Reverb G2 devices, they would not have purchased their devices or would have paid much less for them.

91.    Plaintiff and the members of the Class have been damaged as a result of HP's violations of the CLRA as alleged herein.

92.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the members of the Class seek restitution, disgorgement, and attorneys' fees and costs.

93.    Pursuant to § 1782(a), Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected

consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiff will move to amend his Complaint to pursue claims for actual and punitive damages, as appropriate against Defendant. As to this cause of action at this time, Plaintiff seeks only injunctive relief.

**FOURTH CAUSE OF ACTION**
**Violation of the Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code §§ 1790, *et seq.***
**(on behalf of Plaintiff and the Class)**

94.    Plaintiff realleges and incorporates by reference the foregoing Paragraphs 1–93 as if set forth fully herein.

95.    At all times, Defendant was the manufacturer, distributor, warrantor, and/or seller of the HP Reverb G2 devices. Defendant knew or should have known of the specific use for which the Reverb G2 devices were purchased.

96.    Defendant provided Plaintiff and members of the Class with an implied warranty that its Reverb G2 devices, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold – as virtual reality headsets compatible with Windows, the most commonly used personal computer operating system. The Defendant Reverb G2 devices, however, are not fit for their ordinary purpose because, *inter alia*, HP did not provide continued software functionality of the HP Reverb G2 devices and thus, only a few years after purchase, the Reverb G2 devices lost their advertised features and functions.

97.    The Reverb G2 devices are not fit for the purpose of use as virtual reality headsets with features and functions including PC compatibility, video gaming, streaming, and compatibility with design and productivity applications because Defendant did not ensure continued software support for the HP Reverb device.

98.    Defendant impliedly warranted that the HP Reverb G2 devices were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the Reverb G2 devices that were manufactured, supplied, distributed, and/or sold by Defendant were reliable for use as virtual reality devices with PC compatibility, video gaming, streaming, and compatibility with design and productivity applications, and that they would not prematurely fail due to lack of software support or for any other reason.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (on behalf of Plaintiff and the Class)

99.    Plaintiff incorporates and realleges the foregoing Paragraphs 1–98 as if set forth fully herein.

100.    As a matter of law, Defendant's devices come with an implied warranty of merchantability whereby each device is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

101.    Defendant breached the implied warranty of merchantability, as its devices are not fit for the ordinary purposes for which they are meant to be used, because their owners can no longer use their devices due to complete cessation of software support for such devices.

102.    As such, the loss of software support for Defendant's Reverb devices directly impairs their useability and reliability and renders them unable to operate.

103.    Defendant's devices would not pass without objection in the consumer electronics trade and they are unfit for the ordinary purposes for which such devices are used because they are neither able to function independently of

a computer or other device, nor are they able to function with a computer as designed, due to the loss of software support.

104.   As evidenced by Defendant's conduct, Defendant has had extensive knowledge and awareness that its Reverb devices are now non-functional without WMR. In addition, Defendant has been provided notice of the complete loss of functionality of its devices through numerous complaints online and to Defendant itself, as evidenced by numerous reports of owners seeking solutions to the loss of software support for its Reverb devices through Defendant's official support channels.

105.   Nonetheless, Defendant has failed to remedy the issue and numerous owners of the affected devices are still unable to use them whatsoever.

106.   Defendant's actions and omissions have deprived Plaintiff and the Class members of the benefit of their bargain and have caused their devices to be worth less than what Plaintiff and the other Class members paid for.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (on behalf of Plaintiff and the Class)

107.   Plaintiff incorporates and realleges the foregoing Paragraphs 1–106 as if set forth fully herein.

108.   To the detriment of Plaintiff and the Class Members, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

109.   Plaintiff and the Class Members involuntarily conferred a benefit on Defendant when they purchased the Reverb G2 devices.

110.   Defendant benefitted through its unjust conduct by selling the Reverb G2 devices with the intention of not providing software support for the devices, resulting in a product that is worthless to Plaintiffs and Class Members

now that third-party support through the Windows Mixed Reality platform has been discontinued. As a result, Plaintiff and the members of the Class overpaid for their Reverb G2 devices and/or would not have purchased the devices had they known that Defendant would not step in to provide software support for the Reverb G2 devices, rendering them non-functional.

111.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

112.    These unfair and fraudulent acts allowed Defendant to unlawfully receive monies that would not have been obtained but for Defendant's misconduct.

113.    Defendant lacked any legal justification for having engaged in a course of fraudulent conduct, as alleged herein at Plaintiff's and Class Members' expense.

114.    Plaintiff and Class Members lack an adequate remedy at law.

115.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained monies received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendant for the following relief:

1.    An order certifying the Class as defined above;

2.    A declaration that the conduct of the Defendant as alleged herein is unlawful, unfair and/or deceptive;

3.    An award to Plaintiff and the Class of actual and compensatory damages, as proven at trial;

4. An award to Plaintiff and the Class of restitution of all monies paid to Defendant as a result of the unlawful, deceptive and/or unfair business practices of Defendant;

5. An award to Plaintiff and the Class of reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

6. An award to Plaintiff and the Class of such other and further relief as the nature of the case may require or as may be determined to be just, equitable and proper by this Court.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: October 21, 2025        MCGUIRE LAW, P.C.


By:  /s/ Eugene Y. Turin
Eugene Y. Turin (SBN 342413)
MCGUIRE LAW, P.C.
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
eturin@mcgpc.com

Joseph M. Dunklin (*Pro Hac Vice Forthcoming*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
jdunklin@mcgpc.com

Michael J. Flannery, CA (SBN 196266)
CUNEO GILBERT & LADUCA, LLP
2 City Place Drive, Suite 200
St. Louis, MO 63141-7055
Tel: (314) 226-1015

Class Action Complaint

22

Email: MFlannery@cuneolaw.com

Robert K. Shelquist
CUNEO GILBERT & LADUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Tel: (612) 254-7288
Email: rshelquist@cuneolaw.com

Patrick R. Burns
BURNS LAW FIRM
218 Washington Avenue North, Suite 220
Minneapolis, MN 55401
Tel: (612) 877-6400
Email: Patrick@burns-law.mn

*Attorneys for Plaintiff and the Putative Class*