UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THULR ODINSSON,<br><br>                Plaintiff,<br><br>        v.<br><br>HP, INC.,<br><br>                Defendant. | Case No.  25-cv-09057-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

Plaintiff Thulr Odinsson brings this action individually and on behalf of all others similarly situated.  Dkt. 24 ("FAC").  Before the Court is Defendant HP, Inc.'s ("HP") Motion to Dismiss the FAC.  Dkt. 27 ("Motion").  The Court determines that this matter is suitable for resolution without oral argument.  Civil L.R. 7-1(b).  Having considered the Parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion as follows.

I.      BACKGROUND

This case arises out of Plaintiff's purchase of HP's Reverb G2 virtual reality headset (the "Reverb G2") in June of 2021, (FAC, ¶ 54) and, as it relates to the class allegations, to HP's marketing and sales of the Reverb G2 to consumers broadly, (*see* FAC, ¶¶ 5-53).  Plaintiff is a citizen and resident of Minnesota, while HP is a Delaware corporation with its headquarters in Palo Alto, California.  FAC, ¶¶ 3-4.  The allegations herein are drawn from Plaintiff's FAC, the facts of which the Court takes as true for the purposes of the Motion to Dismiss.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (On a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.").[1]

_____

[1] Facts related to the limited warranty introduced by HP are discussed in Section II, below.

United States District Court
Northern District of California

HP released its "first ever virtual reality headset, the HP Reverb G1," in the Spring of 2019. FAC, ¶ 5. The Reverb G2 followed "in late 2020." *Id.* "The HP Reverb devices are high-resolution, PC-powered virtual reality headsets designed for immersive experiences in gaming, design, and professional applications." *Id.*, ¶ 6. The Reverb G2 had "114° field of view, enhanced lenses and speakers developed with Valve[2], four built-in tracking cameras, and ergonomic controllers." *Id.* In its September 24, 2020 press release describing the Reverb G2, HP stated that, *inter alia*, it "deliver[ed] … plug and play support for Windows Mixed Reality and SteamVR." *Id.*, ¶ 6. In 2020, HP further announced that the Reverb G2 was "[d]eveloped in collaboration with Valve and Microsoft" and that they had "worked closely with Valve and Microsoft to bring customers . . . seamless integration across Windows Mixed Reality and SteamVR platforms." *Id.*, ¶¶ 9-10 (citing two press releases, one available directly on HP's website and one by the HP Development Company, L.P.).

As relevant here, Windows Mixed Reality ("WMR") is a software platform that was previously available in Microsoft's Windows 11 operating system. FAC, ¶¶ 23-28. Plaintiff alleges that, undisclosed by HP, the "The Reverb G2 is wholly dependent on Microsoft's Windows Mixed Reality platform to function; without Windows Mixed Reality software, the headset cannot be recognized by computers and is non-functional for any purpose." *Id.*, ¶ 13. WMR is "the *only* possible way to operate the Reverb G2, which was not designed to be a standalone unit." *Id.*, ¶ 18.

In December, 2023, Microsoft publicly announced that WMR would be depreciated and removed from Windows 11 in a future update. *Id.*, ¶ 23. This occurred in October 2024, with the release of the Windows 11 24H2 update. *Id.*, ¶ 26. Prior to that update, Microsoft also announced that WMR "devices would continue to work with Steam through November 2026, but only if users remained on Windows 11 version 23H2." *Id.*, ¶ 25. Following the October 2024 update, Plaintiff's Reverb G2 "no longer functioned at all" and "essentially become an expensive

---

[2] The Court notes for context that Valve Corporation is an entertainment software and technology company known for, *inter alia*, the game distribution platform "Steam" and game franchises such as *Portal* and *Half-life*. Microsoft is the company that owns and develops the Windows operating systems.

2

paperweight overnight." *Id.*, ¶¶ 27, 67-68.

The gravamen of Plaintiff's complaint is that HP violated consumer protection statutes and the common law in (a) affirmatively misrepresenting the functionality of the Reverb G2 and (b) omitting the fact that the Reverb G2, unlike other virtual reality headsets, was completely reliant on the WMR platform. *See* FAC, ¶¶ 5-69.  Based thereon, Plaintiff brings claims for (1) violation of California's Unfair Competition Law ("UCL");  (2) violation of California's False Advertising Law ("False Advertising");  (3)  violation of the California Consumer Legal Remedies Act ("CLRA");  (4) violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly");  (5) breach of the common-law implied warranty of merchantability.  FAC, ¶¶ 77-133.  Plaintiff also alleges that the sales price of the Reverb G2 he bought was $566, (FAC, ¶ 54) and that, given the alleged deceptive advertising and ultimate lifespan of the devices, "Plaintiff and the members of the Class overpaid for their Reverb G2 devices and/or would not have purchased the device" such that Plaintiff seeks to recover for (Count 6) unjust enrichment.  *Id.*, ¶¶ 134-42.

Plaintiff filed suit on October 21, 2025.  Dkt. 1.  HP moved to dismiss the original complaint on December 17, 2025, and Plaintiff promptly amended his complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  Dkts. 22, 24.  On January 21, 2026, HP filed the Motion.  Dkt. 27.  Briefing concluded on March 4, 2026.  Dkt. 33.

## II.   HP'S REQUEST FOR JUDICIAL NOTICE IS GRANTED;  HP'S REQUEST FOR INCORPORATION BY REFERENCE IS DENIED

HP relies on the Reverb G2's one-year limited warranty in support of some of its choice of law arguments.  *See* Dkt. 27 at 10, 13, 16-18.  The warranty, proffered by HP as Exhibits B-D to its Request for Judicial Notice, designates the governing law as "the law of the country and state, province, or territory in which [the purchaser] currently reside[s], without regard to its conflict-of-law principles."  Dkts. 28-2–28-5 (current warranty, May 2021 warranty, and June 2021 warranty, respectively).  HP requests the Court take judicial notice of the warranty documents in support of its argument that Minnesota law, not California law, applies to this dispute.  Dkt. 28 ("RJN");  *see also* Dkt. 27 at 16-18 (argument in Motion).  HP also requests the Court take judicial notice of Exhibit A, the Reverb G2 datasheet, to substantiate that Reverb G2s "came with a '1 year limited

*United States District Court*
*Northern District of California*

warranty.'" Dkt. 28 at 5.  HP makes arguments both under the doctrines of judicial notice and incorporation by reference.  Dkt. 28 at 2, 5-7.

As the Ninth Circuit has affirmed, "judicial notice and incorporation-by-reference do have roles to play at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  In ruling on a motion to dismiss, a court may consider "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008).

**A.      The Court Takes Judicial Notice of Exhibits A-D .**

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute[,]' [*i.e.*,] if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).  HP argues that the Court may take judicial notice of Exhibits A-B because they are "publicly available webpage[s] and [their] contents are not subject to reasonable dispute," (Dkt. 28 at 5, 6), and Exhibits C-D because they are archival versions of such publicly available webpages, (*id.* at 6-7).  Plaintiff does not dispute the authenticity of these documents, but opposes the "us[e of] extrinsic documents not referenced in the complaint to dispute plaintiff's factual allegations at the pleading stage." Dkt. 32 at 10-11.

The Court finds that it may properly take judicial notice of Exhibits A-D.  Courts have found it appropriate to take notice of publicly available, online warranties, as well as archival content availably from the Internet Archive's Wayback Machine.  *See* Dkt. 28 at 6-7 (citing cases).  However, Plaintiff's caution is well-taken:  under the doctrine of judicial notice at the pleading stage (unlike the doctrine of incorporation by reference, discussed below), a court may not assume the truth of disputed contents of documents subject to judicial notice.  *Yelp Inc. v. Google LLC*, No. 24-cv-06101-SVK, 2025 WL 1168900, at *2 (N.D. Cal. Apr. 22, 2025) (citing *Khoja*, 899 F.3d at 1001;  *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 834 (N.D. Cal. 2011)).  Thus, the Court **GRANTS** HP's request and takes notice of the facts that a limited warranty for the Reverb G2 existed and that the limited warranty contained the choice-of-law clause pointed to by HP – but not other assertions, *e.g.*, that Plaintiff agreed to the warranty.

**B.      Exhibits A-D Are Not Incorporated by Reference in the Complaint**

Alternatively, HP asks the Court incorporate by reference Exhibits A-D.  Dkt. 28 at 2.

> Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims. ... [However], what inferences a court may draw from an incorporated document should also be approached with caution. We have stated that, unlike judicial notice, a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6). While this is generally true, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage.

*Khoja*, 899 F.3d at 1002-03.  Additionally, a document is incorporated by reference in the complaint only "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.* at 1003.

Neither the datasheet (Ex. A) nor limited warranty (Exs. C-D) are referred to extensively in the FAC.  A link to the datasheet appears at the bottom of one news article in the FAC pointed to by HP.  Dkt. 28 at 5 (citing FAC, ¶ 9 n.2).  The warranty is mentioned in only two paragraphs of the Complaint and only as part of Plaintiff's allegations that HP's "standard warranty and support services" failed to "adequately remed[y]" the harm at issue.  FAC, ¶¶ 34-35.[3]  The Court is not persuaded that this is sufficiently "extensive" to warrant incorporation-by-reference absent reliance by Plaintiff on the documents in any claim.  As to such reliance, the Court is persuaded by Plaintiff's argument that he does "not … rely upon HP's Limited Warranty as the basis for any claim," but rather relies on the implied warranty and other statutory protections under California statutory and common law.  *See* Dkt. 32 at 11.  Accordingly, the Court **DENIES** HP's request and does not deem Exhibits A-D to be incorporated by reference into the FAC.

////

---

[3] Plaintiff also refers to legal issues surrounding a "warranty," *e.g.*, at paragraph 76, but the Court reads this as referring to the *implied* warranty alleged by Plaintiff under the Song-Beverly Act. *See* FAC, ¶¶ 76, 113-14, 117-18.

United States District Court
Northern District of California

### III.   LEGAL STANDARD

#### A.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler*, 540 F.3d at 1061.  Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Furthermore, plaintiffs "generally need not plead around affirmative defenses." *Ploof v. Arizona*, No. 22-15061, 2023 WL 2929314, at *1 (9th Cir. Apr. 13, 2023).  To survive a Rule 12(b)(6) motion to dismiss, the Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the claimant to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### B.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020).  "[L]ack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1)." *Id.*  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a "facial" 12(b)(1) challenge, as is presented here, the Court assumes a plaintiff's factual allegations to be true and draws all reasonable inferences in plaintiff's favor. *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-3549 SBA, 2012 WL 12951187, at *3 (N.D. Cal. Mar. 30, 2012) (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

////

////

United States District Court
Northern District of California

## IV.    DISCUSSION

HP argues that all of Plaintiff's claims must be dismissed.  It argues that his statutory claims based on California law must be dismissed because Minnesota law applies to this action and that, in any case, they suffer from a number of pleading defects even under California law. Dkt. 27 at 16-28.  HP further argues that Plaintiff's claims for breach of an implied warranty fails because Plaintiff fails to allege any defect within the warranty period, (*id.* at 31-32), and Plaintiff's claim for unjust enrichment fails as duplicative of other claims.  *Id.* at 32.  Finally HP argues that Plaintiff lacks standing to pursue injunctive relief (to the extent the FAC is read as seeking such relief).  *Id.* at 32-33.

The Court begins by addressing the choice-of-law dispute at the core of HP's Motion.  It then turns to any remaining Rule 12(b)(6) arguments raised by HP, before addressing HP's limited argument that Plaintiff lacks standing to pursue injunctive relief.

### A.    The Court Applies Minnesota Law to Plaintiff's Fraud-Based Claims.  The Court Does Not Resolve the Choice-of-Law Question for Plaintiff's Warranty-Based Claims or Unjust Enrichment Claim

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds, Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).  Accordingly, the Court applies California's choice-of-law rules.  Turning to the Parties' choice-of-law dispute, the Court first addresses HP's proffered limited warranty followed by general choice-of-law principles.

#### 1.    The Limited Warranty Does Not Bar Plaintiff's Claims at this Juncture

The Court has taken notice of the fact that a limited warranty was offered by HP for the Reverb G2, and that the limited warranty contains a choice-of-law clause.  *See, supra*, § II.A. However, the Court does not find that any of Plaintiff's claims are based on the limited warranty such that it may be raised as an affirmative defense to them at the pleading stage.  *See, supra*, § II.B.  Nor does the Court find any allegations in the FAC showing that Plaintiff accepted or used HP's limited warranty.  *See* FAC, ¶¶ 34-35.  Accordingly, the Court agrees with Plaintiff that the limited warranty's choice-of-law provision is not properly before the Court.  *See* Dkt. 32 at 11-12.

United States District Court
Northern District of California

Thus, HP's argument that the Court should find the limited warranty's choice-of-law clause applicable is premature.[4]

### 2.    Analysis Under the Governmental Interest Test

Under California choice-of-law rules, "when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California," courts "analyze the governmental interests of the various jurisdictions involved to select the most appropriate law." *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 915 (2001).  This is "a three-step test" that "requires the proponent of the foreign law to (1) identify material differences between foreign law and California law, and (2) establish that the foreign state is interested in having its own law apply," and then requires the Court to "(3) … [apply] the law of the state whose interests would be 'more impaired' if its law were not applied." *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 1116715, at *2 (N.D. Cal. Mar. 1, 2018) (quoting *Washington Mut. Bank*, 24 Cal. 4th at 919-20).  Here, the Parties agree that there are material differences in California and Minnesota law, and Plaintiff concedes that Minnesota has an interest in having its own law apply.  *Compare* Dkt. 27 at 19-20 *with* Dkt. 32 at 15-16.  Accordingly, the Court turns to the question under the third step:  Which state's interests would be most impaired if its law were not applied?

### a.    Under the Governmental Interest Test, Minnesota Law Applies to Plaintiff's Fraud-Based Claims

The Parties' arguments focus on the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  *Compare* Dkt. 27 at 20 *and* Dkt. 33 at 11 *with* Dkt. 32 at 15-16.  HP argues that the court in *Mazza* "squarely rejected" any argument that California's interests "in regulating California corporations" would be more impaired by the failure to apply California consumer-protection laws than Minnesota's interests "in applying its own law to Plaintiff's claims."  Dkt. 33 at 10-11.  Plaintiff argues that this case "presents the mirror image of

---

[4] The Court need not address the Parties' substantive arguments on:  (1) whether Plaintiff in fact accepted the limited warranty;  (2) the analysis under the *Nedlloyd* framework, set forth in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992);  (3) whether the choice-of-law clause, if it applied, would be unenforceable as in violation of California public policy;  or (4) any affects the warranty might have on the putative class claims.  *See* Dkt. 27 at 17-18;  Dkt. 32 at 12-15;  Dkt. 33 at 9-10.

*Mazza*'s concern," because the question is "whether California's laws should govern claims arising from deceptive advertising that HP conceived, created, and disseminated from California." Dkt. 32 at 15-16.  The Court agrees with HP's reading of *Mazza* as to the fraud-based claims.

The *Mazza* court explained that "California's governmental interest test is designed to accommodate conflicting state policies, as a problem of allocating domains of law-making power in multi-state contexts." *Mazza*, 666 F.3d at 593, *overruled on other grounds, Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).[5]  In this context, the Ninth Circuit explained that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.*  "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id.* Indeed, the Ninth Circuit cited with approval a California case "concluding in a fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place." *Id.* at 593-94.

Taking the allegations of the FAC as true and construing them in the light most favorable to Plaintiff, the "last event" necessary to make HP allegedly "liable" for each of Plaintiff's fraud-based claims occurred in Minnesota.  Specifically, with regard to his affirmative-misrepresentation-based claims, this occurred when misrepresentations were communicated to Plaintiff in Minnesota.  *See Mazza*, 666 F.3d at 593-94 (citing *Zinn v. Ex–Cell–O Corp.*, 148 Cal. App. 2d 56, 80 n. 6 (1957)).  With regard to Plaintiff's omission-based claims, HP's advertising omissions became material and actionable (if at all) when Plaintiff viewed the remainder of the Reverb G2 advertising materials—*i.e.*, when the allegedly material statements were omitted—in Minnesota.  *Cf. id.*  Accordingly, for:

> **Count I.**   Plaintiff's UCL claim for HP's "fail[ure] to disclose that its Reverb devices would become unusable due to loss of software support" and "failure to provide a

---

[5] Sitting *en banc* in *Olean*, the Ninth Circuit overruled *Mazza*'s statement that "no class may be certified that contains members lacking Article III standing." *Olean*, 31 F.4th at 682 n.32.  The Ninth Circuit did "not overrule *Mazza* as to any other holding, which remain good law." *Id.*

United States District Court
Northern District of California

remedy," (FAC, ¶ 79), the "place of the wrong" is Minnesota.

**Count II.**  Plaintiff's False Advertising claim for HP's "material misrepresentations and omissions," (FAC, ¶¶ 88, 90), the "place of the wrong" is Minnesota;  and

**Count III.**  Plaintiff's CLRA claim, which is based on HP's alleged misrepresentations and advertising, (FAC, ¶¶ 98a.-c, 99), the "place of the wrong" is Minnesota.

Thus, Minnesota "has the predominant interest" in Plaintiff's fraud-based claims and Minnesota law applies to these claims.  *Mazza*, 666 F.3d at 593.

### b.    The Place of the Wrong for Plaintiff's Warranty-Based Claims is Unclear at this Juncture

As to Counts IV and V of Plaintiff's FAC, the claims sound not in fraud but in breach of contract:  Plaintiff seeks to hold HP accountable for breach of the Song-Beverly consumer warranty and the implied warranty of merchantability.  *See, generally*, FAC, ¶¶ 111-33.  *Mazza* did not address the "place of the wrong" for breach of contract or warranty cases.  *See Mazza*, 666 F.3d at 593-94. Generally, however, "[i]n the context of [a contract] case, the 'place of the wrongful act' is more properly understood as the place where the parties performed the contract ... or where it was breached."  *See Rigel Marine Servs., Inc. v. M/Y Thomas Crosby V.*, No. 11-cv-9060-GHK (PJWx), 2011 WL 10111682, at *3 (C.D. Cal. Dec. 22, 2011) (in the context of balancing California law against Canadian law).  At least one court in this District has come to a similar conclusion, that the place of the wrong is the place of breach, in the choice-of-law context based on *Mazza*.  *See Hu v. Plehn-Dujowich*, No. 18-cv-01791-EDL, 2019 WL 13090332, at *9 (N.D. Cal. Feb. 25, 2019) (for a claim where an implied contract for the provision of educational services was allegedly procured via fraud, the "final acts" were the "alleged failure to provide promised letters of recommendation and meaningful education," which in occurred in California).  Thus, for Counts IV and V of Plaintiff's FAC, the place of the wrong is the state where HP allegedly violated the Song-Beverly warranty and the implied warranty of merchantability.

Here, the Court determines that it would be premature to resolve the choice-of-law question as to Counts IV and V because it is not clear where the alleged breaches occurred.  Both the Song-Beverly implied warranty and common-law implied warranty claims are based on

United States District Court
Northern District of California

essentially the same allegations: that the Reverb G2 device was warranted to be "fit for the ordinary purposes for which they were sold – as virtual reality headsets compatible with Windows," and in fact failed to function after "only a few years" due to the Windows 11 24H2 update. *See* FAC, ¶¶ 114, 127-30, 26-28.

HP's front-line position, made in its argument in support of dismissal of Plaintiff's implied warranty claims for other reasons, appears to be that the implied warranties were allegedly breached at the time the Reverb G2 ceased to function. *See* Dkt. 27 at 31-32 (arguing that any alleged breach did not occur within the warranty period because Plaintiff's Reverb G2 functioned throughout the period). Under this theory, the alleged breached would have occurred in Minnesota – where Plaintiff's computer was located when it updated to Windows 11 24H2 and thus when and where the Reverb G2 ceased to function. *See* FAC, ¶¶ 3, 26-28, 58, 65, 67-68. Plaintiff argues, however, that the breach occurred when the defective article was sold because the Reverb G2 was *designed* with an allegedly latent defect. *See* Dkt. 32 at 28-30. Under this view, the place of the wrong is the place where title passed, which Plaintiff argues is California. *Id.* HP counters, however, that even assuming it "sent Plaintiff his Reverb G2 pursuant to a 'shipment' contract," the question "is not where HP is headquartered, but rather from where HP shipped Plaintiff's Reverb G2." Dkt. 33 at 20. It is not clear, based on the allegations of the FAC, from which of HP's warehouses Plaintiff's Reverb G2 was shipped. *See id.*

The Court agrees with Plaintiff that a "latent defect" theory is a viable theory under both the Song-Beverly Act and the implied warranty of merchantability, and that Plaintiff has pleaded such a theory. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015). Accordingly, assuming at the pleading stage that the Reverb G2's dependency on WMR was a latent defect, the Court agrees that the implied warranties were allegedly breached at the time of sale and, thus, at the place where title passed. *See* Dkt. 32 at 28-30. Thus, the "place of the wrong" for Counts IV and V might be California, Minnesota, or some third state. The Court thus cannot resolve the choice-of-law question with regard to Counts IV and V at this juncture.

////

////

11

**c.    The Court Does Not Decide What Law Governs Plaintiff's Unjust Enrichment "Claim"**

The *Mazza* court also addressed a claim for unjust enrichment.  *See Mazza*, 666 F.3d at 591.  However, as the Ninth Circuit has explained since *Mazza*, "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

> However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request. The return of that benefit is the remedy typically sought in a quasi-contract cause of action. When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.

*Id.* (internal quotation marks and citations omitted).  The *Mazza* court explained what the "place of the wrong" was for such actions based on *fraud*, but to the extent Plaintiff's "unjust enrichment" action is based on an equitable reason other than fraud, *Mazza* is distinguishable.  The Parties have not addressed this issue in their briefs, (*see, generally*, Dkts. 27, 32, 33), and the Court declines to issue a choice-of-law ruling on this issue.

**B.    Plaintiff's Fraud-Based Claims Are Dismissed with Leave to Amend**

Having determined that Minnesota law applies to Counts I-III of Plaintiff's FAC, the Court **DISMISSES** these claims **with leave to amend**.  Plaintiff may amend, to the extent he can do so in good faith, to state causes of action under Minnesota's relevant consumer protection and false advertising laws.

Because the Court dismisses these claims with leave to amend and gives Plaintiff the chance to address any other deficiencies and to conform his pleading to the requirements of Minnesota law, the Court declines to address HP's alternate arguments under Federal Rules of Civil Procedure 12(b)(6) and 9(b) at this juncture.  *See* Dkt. 27 at 20-30.

////

////

////

////

12

United States District Court
Northern District of California

**C.** **Plaintiff Has Sufficiently Pleaded His Implied Warranty Claims, Apart from the "Place of Shipment" Issue Identified Previously**

Although the Court has not determined which state's laws apply to Plaintiff's implied warranty claims (Counts IV and V), (*see, supra*, § IV.A.2.b.), the Court addresses the alternate Rule 12(b)(6) arguments raised by HP as to these claims.  The Court's analysis picks up where it left off in Section IV.B.2.b., above.

**1.** **The Song-Beverly Act May Apply to Plaintiff's Purchase, But Plaintiff Has Not Pleaded Sufficient Facts to Make its Application Plausible**

First, HP argues that the Song-Beverly Act does not apply to Plaintiff's purchase because it only applies to goods "sold at retail in [California]."  Dkt. 27 at 30 (citing Cal. Civ. Code § 1792). Plaintiff responds that, for goods that are shipped, "title passes to the buyer at the time and place of shipment."  Dkt. 32 at 28 (citing *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, n.7 (C.D. Cal. 2007) (citing Cal. Com. Code § 2401(2)(a))).  HP counters that Plaintiff has not alleged any "facts as to the nature or terms of the shipment and delivery of his Reverb G2."  Dkt. 33 at 20.

The Court agrees with HP.  Plaintiff must allege facts sufficient to state a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 570 (2007).  Given that Plaintiff is domiciled in Minnesota, and HP is alleged to be "one of the largest sellers and distributors of consumer electronics in the United States," distributing electronics nationwide, (*see* FAC, ¶¶ 3-4), the Court finds that Plaintiff must at least allege facts to support a reasonable inference that his Reverb G2 shipped from California.

Accordingly, Count IV of Plaintiff's FAC is **DISMISSED with leave to amend.**

**2.** **Plaintiff Has Plausibly Alleged a Latent Defect**

Finally, HP's remaining and only argument in support of dismissal of Plaintiff's claim under the implied warranty of merchantability (Count V) is that the Reverb G2 functioned as warranted within the warranty period.  *See* Dkt. 27 at 31-32.  At its core, this argument breaks down into two issues:  HP argues the Reverb G2's functional dependency on WMR was not in fact a latent defect because (1) "relying on Microsoft technology was not a defect" and (2) even if viewed as a defect, it was not "latent" because it would have been discovered by a reasonably diligent purchaser.  Dkt. 33 at 19, 21.  HP's arguments on these points, however, are cursory and

do not carry its burden at the pleading stage. "[I]t is hornbook law that courts find goods to be unfit for their ordinary purposes when they can identify one of three general types of defects, including design defects[.] … Warranty liability may be based on ... a design defect." *E.g.*, *Holley v. Gilead Scis., Inc.*, No. 18-cv-06972-JST, 2023 WL 6390598, at *11 (N.D. Cal. Sept. 28, 2023). Thus, whether designing the Reverb G2 with a *dependency* on (and not merely compatibility with) WMR is a defect, as alleged by Plaintiff, is a factual issue that the Court cannot resolve in HP's favor upon a motion to dismiss. So too is the issue of whether a reasonable consumer would have discovered the defect, given the alleged advertising and other statements by HP.

At the pleading stage, the Court need only determine that Plaintiff has plausibly alleged that the dependency on WMR was a latent defect. It finds he has done so. Accordingly, HP's Motion to Dismiss is **DENIED** on this ground.

**D.    The Court Dismisses Plaintiff's "Unjust Enrichment" Claim with Leave to Amend for Failure to Plead in Compliance with Rule 8**

HP argues in summary fashion that Plaintiff's unjust enrichment claim is duplicative of his fraud claims and so should be dismissed for the same reasons. Dkt. 27. In opposition, Plaintiff seeks to clarify his unjust enrichment claim and, relying on *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), urges the Court to construe it as one for quasi-contract. *See* Dkt. 32 at 31. HP adds little in the way of reply. Dkt. 33 at 21-22.

HP has not carried its burden to show that Plaintiff's unjust enrichment claim is entirely duplicative of his fraud-based claims such that it must be dismissed. It may be based, as Plaintiff suggests in opposition, on an unjust "premium" theory based on defective design. *See* Dkt. 32 at 31 ("HP collected $566 from Plaintiff for a premium VR headset whose hardware remains fully functional but that HP's own design choices rendered entirely useless." (citing FAC, ¶¶ 35- 54, 67-68, 134-42). However, particularly in light of Plaintiff's arguments, the Court cannot discern what, precisely, the basis of Plaintiff's unjust enrichment claim *is*. Plaintiff's FAC points vaguely to the "wrongful conduct alleged" throughout the FAC. *See* FAC, ¶¶ 134-35. In this case, the Court declines to construe Plaintiff's claim as a viable quasi-contract claim.

Rather, the Court finds that a Rule 8 dismissal of Plaintiff's shotgun-pleaded unjust

United States District Court
Northern District of California

14

enrichment claim is proper.  As the Ninth Circuit recently explained:

> A shotgun pleading is one where a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count…[.]  Incorporation by reference is permitted by Rule 10(b) and (c), but when it is used indiscriminately, it becomes a shortcut by counsel that violates Rule 8.
>
> * * *
>
> [D]istrict courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts. Whether the parties have raised the issue or not, the district court has "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)."

*Gibson v. City of Portland*, 165 F.4th 1265, 1288-89 (9th Cir. 2026) (citations omitted).  Thus, "when district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood." *Id.* at 1290.  Thus, district courts may (but are not required to) dismiss shotgun pleadings with leave to amend.  *Id.*

Rather than speculate about the basis for Plaintiff's asserted unjust enrichment/quasi-contract claim, which "would be improper," (*see id.* at 1295), the Court **DISMISSES** Plaintiff's unjust enrichment claim as improperly pleaded under Rule 8.  The Court **gives leave to amend this claim** for Plaintiff to clarify the basis under which he seeks restitution.

### E.      Plaintiff Lacks Standing, as Pleaded, to Pursue Injunctive Relief

Finally, the Court turns to the issue of standing for injunctive relief.  HP notes that Plaintiff "does not include an injunction in his prayer for relief," but that the FAC elsewhere "requests that this Court enter such orders or judgments necessary to enjoin Defendant from continuing its unfair and deceptive practices…." Dkt. 27 at 32-33 (quoting FAC, ¶ 85).  HP argues that, although it is "unclear whether Plaintiff seeks injunctive relief," to the extent he does, he lacks standing to pursue it. *Id.*  Plaintiff does not offer any opposition to this argument. *See, generally*, Dkt. 32. Accordingly, HP argues that he has conceded this argument.  Dkt. 33 at 22.  The Court addresses HP's argument briefly.

The Court agrees with HP that, "by failing to meaningfully address" the injunctive-

United States District Court
Northern District of California

United States District Court
Northern District of California

standing argument, Plaintiff has conceded it. *See* Dkt. 33 at 22; *Yuriar v. California*, No. 23-cv-06438-KAW, 2025 WL 3687909, at *9 (N.D. Cal. Dec. 19, 2025) (dismissing cause of action for "loss of familial association" where Plaintiff failed to address it in opposition) (collecting cases). Moreover, because this argument is a standing argument, the Court independently notes that "[p]laintiffs bear the burden to 'demonstrate standing ... for each form of relief that they seek.'" *O'Dea v. RB Health (US) LLC*, 779 F. Supp. 3d 1135, 1144 (C.D. Cal. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). "In the absence of any *specific* demand for injunctive relief, the Court cannot analyze whether the unspecified injunction sought 'will prevent or redress' an 'actual and imminent' concrete injury," and thus Plaintiff's claim for injunctive relief is **dismissed without prejudice** for lack of standing. *Id.* (emphasis added).

## V.     CONCLUSION

For the foregoing reasons, HP's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

- Plaintiff's California statutory fraud-based claims, Counts I-III are **DISMISSED with prejudice**, but Plaintiff is granted **leave to amend** to replace them with appropriate fraud-based claims under Minnesota law.
- Plaintiff's Song-Beverly claim, Count IV, is **DISMISSED with leave to amend**;
- Plaintiff's common-law implied warranty claim, Count V, is sufficiently pleaded; and
- Plaintiff's "unjust enrichment" claim, Count VI, is **DISMISSED with leave to amend** to comply with Rule 8's pleading requirements.

Plaintiff's amended complaint, if any, is due **no later than May 15, 2026**. If Plaintiff does not amend, Defendant's answer to Count V shall be due **no later than May 22, 2026.**

**SO ORDERED.**

Dated: May 1, 2026

_Susan van Keulen_
SUSAN VAN KEULEN
United States Magistrate Judge

16